# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
July 19, 2011 Session

## DANIEL EWING v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Marshall County**
**No. 2010-CR-26      Robert Crigler, Judge**

_____

**No. M2010-02282-CCA-R3-PC - Filed September 27, 2011**

_____

Much aggrieved by his guilty-pleaded convictions of rape and introduction of drugs into a penal institution, the petitioner, Daniel Ewing, filed a petition for post-conviction relief alleging that his guilty pleas were involuntarily and unknowingly entered as a product of the ineffective assistance of counsel. Following the appointment of counsel and an evidentiary hearing, the post-conviction court denied relief. Following our review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS and D. KELLY THOMAS, JR., JJ., joined.

Karen McDonald, Nashville, Tennessee, for the appellant, Daniel Ewing.

Robert E. Cooper, Jr., Attorney General and Reporter; Nicholas W. Spangler, Assistant Attorney General; Charles Crawford, District Attorney General; and Weakley E. Barnard, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

On September 17, 2008, the Dickson County grand jury charged the petitioner with two counts of aggravated rape, *see* T.C.A. § 39-13-502(a)(3)(A) (2006)[1], one count of

---

[1] The defendant was indicted under a theory of criminal responsibility for the conduct of another; in this case his codefendant committed the sexual assault with the petitioner's assistance. *See* T.C.A. § 39-11-402(2). We remind the petitioner that criminal responsibility is a theory of culpability that does not mitigate his responsibility for the offense; thus, his culpability is equal to that of the primary offender. *See*

(continued...)

theft of property valued at less than $500, *see id.* § 39-14-103 and -105(1), and one count of introduction of drugs into a penal institution, *see id.* § 39-16-201. The grand jury charged his codefendant, David Clilion Bates, with two counts of aggravated rape and three counts of assault. Their cases were severed for trial, and following Mr. Bates's convictions at trial, the petitioner pleaded guilty on May 21, 2009, to a reduced charge of rape and introduction of drugs into a penal institution with an agreed sentence totaling 18 years' incarceration in exchange for dismissal of the remaining charges.

At the plea submission hearing, the State offered the following recitation of facts concerning the offense:

> The victim will testify concerning this defendant that his codefendant, Mr. Bates, came in and assaulted her on the bed and the codefendant, Mr. Bates, asked [the petitioner] to hold her arms down and put a pillow over her head, which the victim says that he did, while Mr. Bates unlawfully forcibly penetrated the victim's vaginal area with his penis.

> During the course of that, Mr. Bates asked [the petitioner] to leave, although there was penetration before he left. He did leave and the penetration continued on.

> . . . .

> Then [the petitioner] was taken over to the Marshall County Jail where during the booking search by Dac Burrow he was asked to empty his pockets. He was in an area where prisoners were kept and several, I think three or four, Xanax, Schedule IV controlled substance, pills fell out of his pocket on to the floor . . . .

On March 4, 2010, the petitioner filed a timely pro se petition for post-conviction relief alleging that his guilty pleas were involuntarily entered as a result of the

---

[1](...continued)
T.C.A. § 39-11-401 ("A person is criminally responsible as a party to an offense, if the offense is committed by the person's own conduct, by the conduct of another for which the person is criminally responsible, or by both."). The petitioner's attempt to characterize his ultimate conviction of rape via a criminal responsibility theory as some sort of lesser offense has no basis under the law.

ineffective assistance of counsel. The petitioner, however, failed to express a sufficient factual basis for relief in this petition. Accordingly, the petitioner filed a subsequent petition averring that he was coerced into pleading guilty, that trial counsel told him he would only serve ten years before being released on parole, that he felt pressured into pleading guilty by his codefendant's conviction, and that trial counsel failed to interview some 17 witnesses that the petitioner requested be interviewed.

Following the appointment of counsel, the petitioner filed an amended petition alleging that trial counsel failed to advise him of the consequences of his guilty plea regarding his release eligibility, consecutive service of sentences, and sexual offender registry requirements. In the amended petition, he also alleged that counsel failed to investigate his cognitive ability as it bore on his ability to enter into an understanding and knowing plea, that counsel failed to explain to the petitioner the mens rea requirement for the introduction of drugs into a penal institution offense, and that trial counsel prohibited his family members from attending the codefendant's trial.

At the onset of the September 10, 2010 evidentiary hearing, the State moved to dismiss the allegations contained in the counsel-filed amended petition because the amendment did not comply with the statutory mandate that it be verified under oath. *See* T.C.A. § 40-30-104(e) (requiring that "[t]he petition and any amended petition shall be verified under oath"). Post-conviction counsel conceded that the amendment was not verified.[2] Accordingly, the post-conviction court ruled that the petitioner be precluded from presenting any evidence or argument concerning the additional claims raised in the amended petition. *See Hutcherson v. State*, 75 S.W.3d 929, 931 (Tenn. Crim. App. 2001) ("It is imperative that factual allegations be made and that the petition be verified as true under oath."). The post-conviction court specifically excluded any evidence in support of the petitioner's claim concerning trial counsel's failure to advise him regarding the sexual offender registry requirements. The post-conviction court did, however, allow post-conviction counsel to proffer evidence concerning the sexual offender registry advice in the event the petitioner challenged the court's exclusion on appeal. The petitioner raises no challenge on appeal to the post-conviction court's limitation of proof to those issues raised in the initial petition.

Trial counsel testified that he met with the petitioner several times. During one of the initial meetings, trial counsel asked the petitioner to write his account of the offenses, in part, so that trial counsel could assess the petitioner's ability to spell and write. Based

---

[2] Counsel offered to verify the amendment at the hearing, but the post-conviction court ruled that the unverified claims should be dismissed without allowing the amendment. The petitioner raises no claim on appeal regarding the propriety of this ruling.

upon this writing, trial counsel determined that the petitioner had difficulty spelling but was able to communicate sufficiently. Trial counsel recalled that he interviewed several witnesses, including the petitioner's mother, two of his aunts, his stepfather, and his cousin. He testified that no one suggested that he interview Keyonia Taylor as a potential witness to the petitioner's condition on the night of the offenses.

Trial counsel attended the codefendant's trial and assessed the witnesses' testimony, particularly that of the victim, so that he could advise the petitioner regarding potential outcomes of a trial. Trial counsel recalled that the petitioner's girlfriend, Brittany Tears, told counsel that she was with the petitioner for "all but two minutes" on the night of the offense and that the petitioner was not involved in the victim's assault. Characterizing Ms. Tears as the petitioner's "star witness," trial counsel paid specific attention to her testimony at the codefendant's trial. At the codefendant's trial, however, Ms. Tears admitted that "she stayed playing with her cell phone outside the house for 30 minutes before she went inside" while the petitioner, codefendant, and victim were inside. Because the victim testified that the rape "happened so fast" and because their "star witness," Ms. Tears, had no credibility, trial counsel advised the petitioner to accept a plea offer. Counsel told the petitioner that he "would probably lose" and "end up worse than" his codefendant if he went to trial because the petitioner faced the additional charge of introduction of drugs into a penal institution.

Trial counsel recalled discussing the lengths of the sentences contemplated by the plea agreement. He explained to the petitioner that the rape sentence carried a release eligibility of 100 percent but that with sentence reduction credits, the petitioner may only serve 85 percent of the 12-year sentence. Trial counsel opined that this discussion may have been what led to the petitioner's mistaken belief that he would only serve 10 years' incarceration. Trial counsel testified, however, that the petitioner fully understood that he would serve the six-year sentence for the contraband charge consecutively to the rape sentence. In an offer of proof, trial counsel said that he advised the petitioner regarding the sexual offender registry requirements. Trial counsel admitted that the petitioner acted "combative" with counsel when around the petitioner's mother but stated that "when we were just alone talking at the jail, [the petitioner] said he was going to accept [the plea agreement]."

Trial counsel testified that he was ready to go to trial and that he was "familiar with the case like the palm of [his] hand." He recalled that he shared each piece of discovery material with the petitioner. He stated that the petitioner understood the benefit of pleading to a Class B felony, rape, rather than risking conviction of a Class A felony, aggravated rape. In summary, trial counsel said that the petitioner "understood everything, and he told me that he [was] ready to take the plea that day."

-4-

Amy Greer, the petitioner's aunt, testified that she saw the petitioner in the early morning hours of June 21, 2008.[3] She said that the petitioner was "really messed up" and "falling all over the place." She also said that the petitioner was unable to "read all that good" and "always had trouble in school." She testified that she wrote a statement for trial counsel but that trial counsel did not interview her.

Sandra Greer, the petitioner's aunt, testified that the petitioner visited her home from approximately 10:00 a.m. until 7:00 p.m. on June 20. She recalled that after the petitioner left her home at 7:00, he returned near midnight. Ms. Greer said that the petitioner was so intoxicated that she sent him home. Ms. Greer, however, heard the petitioner in her home sometime after 2:00 a.m. when he fell as "his baby mama [was] helping him to the bathroom." Ms. Greer testified that the petitioner "always had problems" in school but that he could comprehend things that were read to him. She also recalled that trial counsel told the petitioner's family that the sentence would be 12 years and that they were surprised when the trial court announced a sentence of 18 years at the plea submission hearing.

Keyonia Taylor, the petitioner's cousin, testified that she saw the defendant as he was leaving the victim's house at approximately 9:30 p.m. on June 20. She recalled that the petitioner's girlfriend helped him to the car "because he could barely walk." She acknowledged that she testified at the codefendant's trial consistently with her testimony at the evidentiary hearing.

Jada Hurt, the petitioner's cousin, testified that she saw the petitioner at approximately 3:00 a.m. on June 21 and that the petitioner was basically "unconscious . . . sitting up asleep." She overheard discussions with trial counsel concerning the plea agreement and recalled that the petitioner's sentence would be 10 years or 18 years – "something like that."

The petitioner's mother, Audrey Hardin, testified that she gave trial counsel a list of witnesses and even obtained statements from several witnesses concerning the petitioner's whereabouts and impairments on the night of the offense. She recalled that Christopher Jackson gave a statement to the police concerning the petitioner's involvement, but Mr. Jackson could not be located. She testified that the petitioner had limited cognitive ability and attended "special ed" in school. She, like other family members, understood the petitioner's sentence to be 12 years' incarceration and was surprised when the sentence was 18 years. She said that trial counsel did not explain the sexual offender registry requirements to the petitioner during any meetings she attended.

---

[3] We discern from the record that the rape occurred sometime during the evening of June 20, 2008.

The petitioner testified that trial counsel approached him with the plea offer and "basically told [him that he] would get found guilty." He faulted trial counsel for not hiring investigators to locate Mr. Jackson, whom the defendant claimed would have provided him an alibi that the codefendant had directed Mr. Jackson, the petitioner, and Ms. Tears to leave the victim's home before any assault occurred. Regarding the length of his sentence, the petitioner stated that he thought he agreed to a sentence of 10 years. He then stated, "If I knew that it wasn't [10 years], I would never have took the deal. If I thought I had to serve more than one day over 10 years, I would have never took that deal." The petitioner said that the sexual offender registry requirements were "never mentioned at all." Regarding trial counsel's overall advice concerning the plea, the petitioner said, "[I]f I knew all of the consequences behind my plea, I never would have entered that plea."

Trial counsel testified in rebuttal and stated that he did not have funds available to hire an investigator to find Mr. Jackson but that he did stay in contact with investigators from the public defender's office who were also searching for Mr. Jackson through their representation of the codefendant. Trial counsel denied telling any family members that they could not attend the codefendant's trial and explained that the petitioner's family must have been confused about the rule of sequestration concerning testifying witnesses. Regarding the petitioner's claim that he did not understand that he was agreeing to an 18-year sentence, trial counsel testified, "He is lying."

Based upon this evidence and a review of the plea submission hearing exhibited at the evidentiary hearing, the post-conviction court accredited the testimony of trial counsel and found that the petitioner freely, understandingly, and voluntarily entered his guilty pleas. The court further ruled that none of the witnesses could have provided an alibi and that trial counsel was not deficient in advising the petitioner to plead guilty. The court made no findings regarding trial counsel's advice concerning the sexual offender registry or other consequences based upon its earlier ruling that the claims contained in the unverified amendment filed by counsel would not be considered.

On appeal, the petitioner urges this court to reverse the post-conviction court's denial of relief. He contends trial counsel's failure to interview witnesses and to explain the consequences of his guilty plea, specifically the sexual offender registry requirements, rendered his guilty plea involuntary. The State argues that the post-conviction court correctly denied relief based upon the voluntariness of the plea and ineffective assistance of counsel. The State also asserts that the petitioner has waived any allegation concerning trial counsel's failure to advise him regarding lifetime supervision.

The post-conviction petitioner bears the burden of proving his allegations by clear and convincing evidence. *See* T.C.A. § 40-30-110(f) (2006). On appeal, the appellate

court accords to the post-conviction court's findings of fact the weight of a jury verdict, and these findings are conclusive on appeal unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

To establish entitlement to post-conviction relief via a claim of ineffective assistance of counsel, the post-conviction petitioner must affirmatively establish first that "the advice given, or the services rendered by the attorney, are [not] within the range of competence demanded of attorneys in criminal cases," *see Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), and second that his counsel's deficient performance "actually had an adverse effect on the defense," *Strickland v. Washington*, 466 U.S. 668, 693 (1984). In other words, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

In the context of a guilty plea, the petitioner must establish that "counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). To do so, he must show "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.*; *see Hicks v. State*, 983 S.W.2d 240, 246 (Tenn. Crim. App.1998). In the context of ineffective assistance of counsel that resulted in a guilty plea, the petitioner is not required to demonstrate that he likely would have fared better at trial than he did by pleading guilty, although evidence of this type can be persuasive that he would have insisted on his right to a jury trial. *See Hill*, 474 U.S. at 59. Should the petitioner fail to establish either deficient performance or prejudice, he is not entitled to relief. *Id.* at 697; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn.1996). Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

When reviewing a claim of ineffective assistance of counsel, we will not grant the petitioner the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief on the basis of a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Claims of ineffective assistance of counsel are mixed questions of law and fact. *State v. Honeycutt*, 54 S.W.3d 762, 766-67 (Tenn. 2001); *State v. Burns*, 6, S.W.3d 453, 461

(Tenn. 1999). When reviewing the application of law to the post-conviction court's factual findings, our review is de novo, and the post-conviction court's conclusions of law are given no presumption of correctness. *Fields*, 40 S.W.3d at 457-58; *see also State v. England*, 19 S.W.3d 762, 766 (Tenn. 2000).

The record in this case fully supports the findings of fact and conclusions of law of the post-conviction court concerning the voluntariness of the guilty plea and representation of counsel. The overall record belies the testimony of the petitioner that he did not understand the guilty plea agreement and that trial counsel performed deficiently in any manner concerning those issues raised in the petition. The plea submission hearing transcript corroborates trial counsel's testimony concerning the petitioner's understanding of the sentence lengths and release eligibility. The petitioner failed to establish any deficient performance concerning trial counsel's investigation of the case and interviewing of witnesses. To the extent that the petitioner claims that counsel was deficient by failing to locate Christopher Jackson, we note that the petitioner also failed to present Mr. Jackson as a witness at the evidentiary hearing. As such, the petitioner failed to establish his claim for relief. *See Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990) (holding that a post-conviction petitioner generally fails to establish his claim that counsel did not properly investigate or call a witness if he does not present the witness to the post-conviction court because a post-conviction court may not speculate "on the question of . . . what a witness's testimony might have been if introduced" at trial). Therefore, the petitioner failed to establish his entitlement to post-conviction relief.

We now turn to the State's argument that the petitioner has waived any allegation that "the trial court failed to advise him about the mandatory lifetime supervision consequence of his plea." In his principal brief, the petitioner argues that "[c]ounsel did not inform [him] that his plea would require him to register as a sex offender, nor did he inform him of any of the other consequences related to being a convicted felon." Citing *Ward v. State*, 315 S.W.3d 461 (Tenn. 2010), the petitioner then distinguishes between lack of advice concerning sexual offender registry requirements versus lifetime community supervision as it applies to the ineffective assistance of counsel affecting the voluntariness of a guilty plea. Presumably, the State understood this to be an additional attack on the voluntariness of the plea based upon advice concerning lifetime community supervision. In his reply brief, however, the petitioner states that he "is not subject to lifetime community supervision but he is required to register as a sex offender." Thus, it appears that the petitioner is limiting his allegation to trial counsel's failure to advise him regarding the sexual offender registry.

The petitioner included the sexual offender registry allegation in an unverified amendment filed by counsel, counsel conceded at the evidentiary hearing that the amendment was unverified, and the post-conviction court dismissed this allegation from its consideration.

For this reason, the post-conviction court made no findings concerning this allegation. We note once more that the petitioner raised no issue on appeal concerning the propriety of the post-conviction court's dismissal of the amended petition claims. Thus, we are hampered by the petitioner's initial failure to include this allegation in a properly verified amendment as well as the petitioner's failure to challenge on appeal the post-conviction court's ruling dismissing the amendment. Accordingly, we conclude that the petitioner failed to preserve this issue in any manner for this court's review.

Additionally, we note that the petitioner's judgment for rape does not include a notation that the petitioner is subject to community supervision for life. *See* T.C.A. 40-35-524(a) ("any person who . . . commits a violation of § 39-13-503 [a rape] . . . shall receive a sentence of community supervision for life"). Furthermore, the transcript of the plea submission hearing is completely silent concerning any advice by either trial counsel or the trial court concerning this additional consequence of his guilty plea. Much as this court is hampered by the petitioner's omissions concerning the sexual offender registry allegation, we are likewise hampered by post-conviction counsel's mistaken belief that the petitioner "is not subject to lifetime community supervision." Nevertheless, we recognize that the judgment in this case is potentially illegal. *See State v. Bronson*, 172 S.W.3d 600, 601-02 (Tenn. Crim. App. 2005), *perm. app. denied* (Tenn. 2005) ("the failure to include the community supervision for life provisions rendered the defendants' sentences illegal"); *see also Ward*, 315 S.W.3d at 477 (the trial court's failure to advise the petitioner during a plea colloquy concerning mandatory community supervision for life rendered the guilty plea involuntary); *Calvert v. State*, — S.W.3d —, No. M2008-00426-SC-R11-PC, slip op. at 15 (Tenn., Nashville, Apr. 28, 2011) ("a lawyer's failure to advise his or her client about the mandatory lifetime community supervision sentence, where the client is considering a plea to one or more of the relevant offenses, is deficient performance"). Furthermore, the petitioner in this case testified at the evidentiary hearing that "if [he] knew all of the consequences behind [his] plea, [he] never would have entered that plea."

Nevertheless, because the petitioner failed to properly allege any claim for relief relative to mandatory lifetime community supervision, we are precluded from taking any action in this post-conviction case concerning this issue. In addition to the strict pleading requirements of the post-conviction procedure act, *see* T.C.A. § 40-30-104(d), appellate review is generally limited to the issues raised and decided in the trial court. *See* Tenn. R. App. P. 13(b); 36. Furthermore, "[t]he plain error doctrine has no application in post-conviction relief proceedings." *Alfio Orlando Lewis v. State*, No. M2004-01282-CCA-R3-PC, slip op. at 6 (Tenn. Crim. App., Nashville, Mar. 16, 2005), *perm. app. denied* (Tenn., Nashville, Oct. 31, 2005). We reflect that claims for relief regarding this issue more aptly sound in habeas corpus law.

*Conclusion*

The record in this case fully supports the findings of fact and conclusions of law of the post-conviction court. The judgment of the post-conviction court denying relief is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE